**Jessica THOMAS, Plaintiff,**

**v.**

**ALCON LABORATORIES, and Fictitious Parties (1–5), Defendants.**

Civil Action No. 1:12–CV–3678–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

Signed Jan. 29, 2013.

Bryce Cooper Angell, The Angell Law Firm, LLC, Troy Kiber, Dixon Mills, LLC Atlanta, GA, for Plaintiff.

Lori Gail Cohen, Sara K. Thompson, Sean Patrick Jessee, Greenberg Traurig, LLP, Atlanta, GA, for Defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This products liability case is currently before the Court on Defendant Alcon Laboratories' ("Alcon" or "Defendant") Motion to Dismiss [Doc. 5] and Defendant's Motion to Dismiss Plaintiff's Amended Complaint [Doc. 11]. For the reasons set forth

below, Defendant's Motion to Dismiss [Doc. 5] is DISMISSED AS MOOT, and Defendant's Motion to Dismiss Plaintiff's Amended Complaint is GRANTED.

## I.  Background[1]

Defendant "designed, developed, manufactured, tested, packaged, advertised, promoted, marketed, distributed, labeled, and/or sold the contact lens product known as Air Optix contact lens" [Doc. 10 ¶ 9]. On or about September 22, 2010, Plaintiff Jessica Thomas ("Plaintiff" or "Thomas") used these contact lenses [*Id.* ¶¶ 11, 28]. Following such use, Thomas experienced pain, irritation, redness, blurred vision, itching, and light sensitivity [*Id.* ¶¶ 23, 28]. Thomas sought treatment at the Gwinnett Clinic where she was diagnosed with conjunctivitis [*Id.* ¶ 29]. Subsequently, Thomas' condition worsened prompting her to seek medical treatment at the Thomas Eye Group, where she was diagnosed as having "ulcers on the cornea due to the subject product manufactured and distributed by the Defendant" [*Id.* ¶ 30; *see also id.* ¶¶ 23–24 (Plaintiff explaining she "was diagnosed as having developed pseudomonas in her left eye" "as a direct and proximate result of her use of the Air Optix contact lens")]. On or about September 24, 2010, Plaintiff was admitted to Emory Clinic, where she underwent a left corneal transplant [*Id.* ¶¶ 27, 31].

Thomas claims that unbeknownst to her, when she purchased and used the contact lenses they had "latent and dangerous properties that significantly increased the likelihood that a person using the product would contract pseudomanas [sic], a severe eye infection" [Doc. 10 ¶ 13]. Moreover, Thomas asserts Defendant violated the Federal Food, Drug and Cosmetic Act ("FDCA") because, for example, "[t]he subject product was adulterated or misbranded" [*Id.* ¶ 14; *see also id.* ¶¶ 15–22].

On September 21, 2012, Plaintiff filed a Complaint in the State Court of Gwinnett County, Georgia [Doc. 1–1]. On October 22, 2012, Defendant removed this case to this Court [Doc. 3].[2] A week later, on October 27, 2012, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. 5]. However, on November 19, 2012, Plaintiff filed her first Amended Complaint [Doc. 10], in which she asserts state law claims for: (1) negligence; (2) strict liability; (3) breach of express warranty; and (4) breach of implied warranty. Plaintiff seeks compensation for "past and future medical expenses," "physical and mental pain and suffering," "permanent disability and loss of enjoyment of life," and "future lost wages and diminished earning capacity," as well as punitive damages and the costs of litigation [*Id.* at 16–19].

On December 3, 2012, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint [Doc. 11].[3] Defendant contends that "[a]ll of Plaintiff's claims aris-

---

1. At this stage, the Court must accept the well-pleaded factual allegations in Plaintiff's Amended Complaint. *See Next Century Commc'ns Corp. v. Ellis,* 171 F.Supp.2d 1374, 1378 (N.D.Ga.2001) (Thrash, J.) ("In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construes them in the light most favorable to the plaintiff." (citation omitted)).

2. The Court has jurisdiction over this case as the parties are completely diverse—Plaintiff is a citizen of Georgia, and Defendant is incor-

porated in Delaware with its principal place of business in Texas. While Plaintiff does not allege a specific amount of damages, it is clear from the face of Plaintiff's Complaint that the amount in controversy exceeds $75,000 [*accord* Doc. 10 ¶ 5 (Plaintiff acknowledging in her Amended Complaint that the Court has diversity jurisdiction)].

3. Defendant requested oral argument on this Motion [Doc. 11 at 2]. Finding a hearing is unnecessary, the Court denies this request.

ing out of her use of contact lenses allegedly manufactured by Alcon must fail as a matter of law because they fail to satisfy federal pleading standards and are expressly and impliedly preempted by federal law" [Doc. 11–1 at 1]. Along with this Motion, Defendant submitted a copy of documents maintained on the Food and Drug Administration's ("FDA") website, including a Premarket Approval ("PMA") application for the lenses, and the FDA's approval letter [Docs. 11–2; 11–3; 11–4].

On December 17, 2012, Plaintiff filed a response in opposition [Doc. 12], arguing: (1) Defendant's Motion should be construed as a motion for summary judgment since Defendant submitted matters outside of the pleadings; (2) "Plaintiff has asserted a plausible set of facts that form the basis of her suit" and "[s]he has provided fair notice of her claims to [D]efendant"; and (3) her claims are not preempted [Id.].[4] Defendant filed its reply on December 31, 2012 [Doc. 13].

## II. *Legal Standard*

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In ruling on the pending Motion to Dismiss, all of the well-pleaded factual allegations in the plaintiff's complaint must be accepted as true and construed in the light most favorable to the plaintiff. *Young Apartments, Inc. v. Town of Jupiter, Fla.,* 529 F.3d 1027, 1037 (11th Cir.2008).

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotation marks and citations omitted). More specifically:

[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks and citations omitted). To survive a Rule 12(b)(6) motion, "the plaintiff's factual allegations, when assumed to be true, must be enough to raise a right to relief above the speculative level." *United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1270 (11th Cir.2009) (internal quotation marks and citation omitted).

## III. *Discussion*

### A. No Conversion of Motion to Dismiss

■ Plaintiff argues that Defendant's Motion to Dismiss Plaintiff's Amended

---

4. In concluding her response, Plaintiff states: "In the alternative, the Court should allow limited discovery of the specific PMA procedures in place pertaining to the subject product, so that the Plaintiff may amend her complaint with great[er] specificity of the particular PMA # P010019 regulations, standards, methods or procedures that were violated" [Doc. 12 at 20–21; *see also id.* at 2 ("As Plaintiff has not yet been provided the opportunity to conduct meaningful discovery

to flesh out her claims, the instant Motion to Dismiss is premature, and should be denied.")]. The Court finds Plaintiff's argument/request unpersuasive. *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1367 (11th Cir.1997) ("Facial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should, however, be resolved before discovery begins.") (footnote omitted).

Complaint should be construed as a motion for summary judgment [Doc. 12 at 3]. The Court disagrees; the FDA documents submitted by Defendant may be considered without converting the instant motion into a motion for summary judgment.

The United States Court of Appeals for the Eleventh Circuit has held that "a district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion [to dismiss] into a Rule 56 [summary judgment] motion." *Serpentfoot v. Rome City Comm'n*, 322 Fed.Appx. 801, 807 (11th Cir.2009) (per curiam) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir.1999)). For that reason, so long as the documents at issue constitute matters of public record, the Court may consider those documents without converting the instant motion into a motion for summary judgment.

"The Court is permitted to take judicial notice of documents made publicly available by a government entity." *Henderson v. Sun Pharm. Indus., Ltd.*, 809 F.Supp.2d 1373, 1379 n. 4 (N.D.Ga. 2011) (Murphy, J.). Accordingly, courts have taken judicial notice of documents from the FDA, a government entity, when ruling on a motion to dismiss. *E.g., McClelland v. Medtronic, Inc.*, No. 6:11–CV–1444–Orl–36KRS, 2012 WL 5077401, at *2 (M.D.Fla. Sept. 27, 2012) (considering "public records of the FDA" because "matters in the public record are susceptible to judicial notice and consideration in resolving a motion to dismiss"); *Henderson*, 809 F.Supp.2d at 1379, 1379 n.

4. Plaintiff has not cited, and the Court's independent research has not uncovered, any Eleventh Circuit precedent clearly foreclosing the consideration of the FDA's documents. In the absence of any such authority, the Court concludes that it may consider the documents from the FDA as a matter of public record without converting the instant motion into a motion for summary judgment.

### B. Motion to Dismiss Plaintiff's Amended Complaint [5]

Defendant argues that Plaintiff's Amended Complaint should be dismissed because it is insufficiently pled, and because Plaintiff's claims are preempted. As discussed below, the Court finds Plaintiff has failed to state a valid claim, and thus her Amended Complaint [Doc. 11] is due to be dismissed.

#### 1. Preemption Framework [6]

In 1976, Congress enacted the Medical Device Amendments of 1976 (the "MDA") "which swept back some state obligations and imposed a regime of detailed federal oversight" for medical devices. *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 316, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008). "The devices receiving the most federal oversight are those in Class III," such as the contact lenses at issue in this case. *Id.* at 317, 128 S.Ct. 999; 21 C.F.R. § 886.5925(b)(2) (specifying soft contact lenses intended for extended wear are Class III devices). "[T]he MDA established a rigorous regime of premarket approval for new Class III devices." *Riegel*,

---

5. Defendant's original Motion to Dismiss [Doc. 5] is dismissed as moot. Plaintiff filed an Amended Complaint [Doc. 10] after Defendant filed this Motion, and a motion to dismiss is rendered moot by an amended pleading. *Sheppard v. Bank of Am., NA*, No. 1:11–CV–4472–TWT, 2012 WL 3779106, at *4 (N.D.Ga. Aug. 29, 2012) (Thrash, J.); *Bradley v. Dekalb Cnty., Ga.*, No. 1:10–CV–218–TWT–GGB, 2010 WL 4639240, at *2 (N.D.Ga. May

17, 2010) (Brill, Mag. J.), *adopted by* 2010 WL 4638887 (N.D.Ga. Nov. 4, 2010) (Thrash, J.); *Cordell v. Pac. Indem.*, No. CIV A. 4:05CV167–RLV, 2006 WL 1935644, at *4 (N.D.Ga. July 11, 2006) (Vining, J.).

6. The Court, in addressing whether Plaintiff's claims are preempted, will also consider Defendant's argument that Plaintiff's claim are insufficiently pled.

552 U.S. at 317, 128 S.Ct. 999. "The FDA spends an average of 1,200 hours reviewing each application." *Id.* at 318, 128 S.Ct. 999. Even after premarket approval, the FDA continues to oversee the approved medical device. *Id.* at 319, 128 S.Ct. 999.

"The MDA includes an express pre-emption provision." *Riegel,* 552 U.S. at 316, 128 S.Ct. 999. This provision states:

Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement-(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a). The United States Supreme Court, in *Riegel,* established a two-pronged test for determining whether state law claims are preempted under the MDA. *Riegel,* 552 U.S. at 321–22, 128 S.Ct. 999.

First, a court must "determine whether the Federal Government has established requirements applicable to the device." If so, "the court must then determine whether the plaintiff's common-law claims are based upon state law requirements with respect to the device that are 'different from, or in addition to' the federal ones, and that relate to safety and effectiveness."

*Wolicki–Gables v. Arrow Int'l, Inc.,* 634 F.3d 1296, 1301 (11th Cir.2011) (quoting *Riegel,* 552 U.S. at 321–22, 128 S.Ct. 999) (alterations omitted). If the court determines state law does impose different or additional requirements relating to safety and effectiveness, the claim is preempted. 21 U.S.C. § 360k(a).

There is however an exception for "parallel claims." The United States Supreme Court explained that:

State requirements are pre-empted under the MDA only to the extent that they are "different from, or in addition to" the requirements imposed by federal law. Thus, § 360k does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case "parallel," rather than add to, federal requirements.

*Riegel,* 552 U.S. at 330, 128 S.Ct. 999; *see also Wolicki–Gables,* 634 F.3d at 1300 ("In *Riegel,* the Supreme Court held that the MDA preemption clause does not apply to a parallel claim.").

The United States Court of Appeals for the Eleventh Circuit has held that to state a parallel claim, "[a] plaintiff must allege that 'the defendant violated a particular federal specification referring to the device at issue.'" *Wolicki–Gables,* 634 F.3d at 1301 (citation and alteration omitted). In other words, "[p]arallel claims must be specifically stated in the initial pleadings" and "the complaint must set forth facts pointing to specific PMA requirements that have been violated." *Id.* (internal quotation marks and citation omitted); *see also Cline v. Advanced Neuromodulation Sys., Inc.,* 914 F.Supp.2d 1290, 1300 (N.D.Ga.2012) (Totenberg, J.) ("In *Wolicki–Gables,* the court stated that a properly alleged parallel claim must both: (1) claim the violation of a particular federal regulation, and (2) 'set forth facts pointing to specific ... requirements that have been violated.'" (quoting *Wolicki–Gables,* 634 F.3d at 1301)). Thus, "[p]laintiffs cannot simply incant the magic words '[defendant] violated FDA regulations' in order to avoid preemption." *Wolicki–Gables,* 634 F.3d at 1301.[7]

---

**7.** Plaintiff contends *Wolicki–Gables* does not stand for the proposition that Plaintiff must

point to specific PMA requirements that have

2. *Plaintiff's Pure State Law Claims*

■ Plaintiff seems to acknowledge that pure state law claims for strict liability and negligence are preempted. Plaintiff noted, in her response, that she "fil[ed] an amended complaint in order to make plain that she has now abandoned any preempted state law claims, and that her claim[s] [are] based exclusively on violations of federal regulations and violations of express and implied warranties issued by Defendant, which are not preempted by federal law" [Doc. 12 at 2]. It appears, based on this statement, that Plaintiff may still be raising pure state law claims for breach of express and implied warranties, as well as parallel claims. For the reasons set forth below, the Court finds Plaintiff's state law claims for breach of express and implied warranties are preempted under *Riegel.*

A PMA-approved device automatically satisfies the first prong of the *Riegel* framework, and here it is undisputed that the contact lenses at issue received PMA approval. *See Horn v. Boston Scientific Neuromodulation Corp.*, No. CV409–074, 2011 WL 3893812, at *3 (S.D.Ga. Aug. 26, 2011); *Llado–Carreno v. Guidant Corp.*, No. 09–20971–CIV, 2011 WL 6223409, at *3 (S.D.Fla. May 16, 2011) ("With regard to the first question, the *Riegel* Court expressly held that premarket approval imposes federal 'requirements' under the MDA, and thus has a preemptive effect." (citation omitted)); *Leonard v. Medtronic, Inc.*, No. 1:10–CV–03787–JEC, 2011 WL 3652311, at *4 (N.D.Ga. Aug. 19, 2011) (Carnes, C.J.).

As for the second prong of the *Riegel* framework, Plaintiff's claims clearly relate to the "safety and effectiveness" of the contact lenses [*e.g.*, Doc. 10 ¶ 51 ("Defendant expressly warranted to Ms. Thomas that the subject product was safe and fit for use for its intended purposes, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested and fit for its intended use.")]. Courts have consistently found that state law claims for breach of warranties based on the safety or effectiveness of the device, impose requirements "that 'are different from, or in addition to' " federal regulations, and thus are preempted. *Riegel,* 552 U.S. at 330, 128 S.Ct. 999 (affirming dismissal of the plaintiff's claims for: negligence; strict liability; and breach of implied warranty); *Horn,* 2011 WL 3893812, at *4–7 (holding plaintiff's state law claims for strict liability, negligence, and breach of implied warranty were preempted under *Riegel* )[8]; *Leonard,* 2011 WL 3652311, at *6–11 (concluding plaintiff's claims, which included

been violated [Doc. 12 at 10 n. 1]. The Court disagrees as courts in this circuit have cited *Wolicki–Gables* as standing for this proposition. *E.g., Leonard v. Medtronic, Inc.,* No. 1:10–CV–03787–JEC, 2011 WL 3652311, at *5 (N.D.Ga. Aug. 19, 2011) (Carnes, C.J.) ("To properly allege parallel claims, the complaint must further set forth facts pointing to specific pre-market approval requirements that have been violated" (citing *Wolicki–Gables,* 634 F.3d at 1301)); *Llado–Carreno v. Guidant Corp.,* No. 09–20971–CIV, 2011 WL 6223409, at *5 (S.D.Fla. May 16, 2011).

8. In *Horn,* the court found that Plaintiff's claim for breach of express warranty was not preempted as it was a parallel claim. The

*Horn* court reasoned that the plaintiff's claim was distinguishable from other claims, which courts found preempted because: "[p]laintiff is not suing for a breach of a promise about safety, effectiveness, or any other requirement imposed by the FDA or the PMA. Rather, his claim is based on a voluntary contractual promise...." *Horn,* 2011 WL 3893812, at *10. Here, unlike in *Horn,* Plaintiff's claim is based on "a promise about safety, [and] effectiveness." *Compare* Doc. 10 ¶ 51, *with Horn,* 2011 WL 3893812, at *9 ("Count V of [p]laintiff's complaint asserts a claim for Breach of Express Warranty, fundamentally based on [d]efendant's assurance that 'the battery would last five (5) years....' ").

negligence, strict liability, breach of implied warranty, and breach of express warranty, were preempted because plaintiff failed to allege valid parallel claims). Accordingly, because it is clear Plaintiff cannot raise a pure state law claim, the issue is whether Plaintiff, by referring to federal regulations, has sufficiently alleged actionable parallel claims.

### 3. *Plaintiff's Parallel Claims*

■ Plaintiff, in her Amended Complaint [Doc. 10], asserts Defendant violated: 21 U.S.C. §§ 331, 351(a) and (h), 21 C.F.R. § 820.70(c), (d), and (e), and 820.90(a); and "other good manufacturing practice regulations mandated by the [FDA] in manufacturing, packaging, and distributing the subject product" [*Id.* ¶¶ 14–21]. Plaintiff also generally alleges Defendant violated "applicable federal law, federal regulations, and good practices," without indicating what specific or additional provisions were violated [*e.g., id.* ¶ 35].

Defendant argues:

Plaintiff fails to allege any facts explaining how the regulations she cites were violated by Alcon, nor does she provide any credible explanation for how the alleged violations of the regulations are causally related to her claimed injuries. Further, the current good manufacturing practice ('CGMP') requirements that Plaintiff alleges Alcon violated do not impose specific manufacturing requirements on medical device manufacturers and are too open-ended to serve as the basis for a parallel claim.

[Doc. 11–1 at 3]. The Court agrees.

As an initial matter, 21 U.S.C. § 351(a) and (h) do not exist. Plaintiff has also cited to 21 U.S.C. § 331, but this part of the Code deals with "over-the-counter antacid product[s]," and thus has no relevance

to this case. *See* 21 C.F.R. § 331.1. The Court can only assume that Plaintiff has inadvertently cited the wrong regulations, but Plaintiff has not clarified this matter.[9]

As for 21 C.F.R. §§ 820.70(c), (d), and (e), and 820.90(a), these regulations are contained in the "Quality System Regulation" ("QSR") portion of the Code of Federal Regulations. Courts have held that the regulations contained in the QSR portion of the Code, cannot serve as the basis for a parallel claim. The court in *Horn*, 2011 WL 3893812, at *8–9, emphasized this point in discussing such regulations, noting:

> instead, each regulation cited is nothing more than a general statement of a ... [CGMP]. It has been recognized that these standards are intended to serve only as an umbrella quality system providing general objectives medical device manufacturers must seek to achieve. These regulations are purposefully broad so as to apply to a broad range of medical devices. The regulations are to be tailored by each manufacturer of a device to apply to their particular safety and efficacy needs. The intentionally vague and open-ended nature of the regulations relied upon is the precise reason why they *cannot serve as the basis for a parallel claim.* Since these regulations are open to a particular manufacturer's interpretation, allowing them to serve as a basis for a claim would lead to differing safety requirements that might emanate from various lawsuits. This would necessarily result in the imposition of standards that are different from, or in addition to those imposed by the MDA—precisely the result that the MDA preemption provision seeks to prevent. *Accordingly, where, as here, a plaintiff relies on nothing more tha[n] CGMP's*

---

9. Defendant noted in its Motion to Dismiss that 21 U.S.C. §§ 331 and 351 do not exist [Doc. 11–1 at 22 n. 15], but Plaintiff did not respond to this point [*see generally* Doc. 12].

*in support of a parallel cause of action, preemption bars the claim.*

*Horn,* 2011 WL 3893812, at *9 (quoting *Ilarraza v. Medtronic, Inc.,* 677 F.Supp.2d 582, 588 (E.D.N.Y.2009)) (emphasis added, and internal quotation marks and alterations omitted).[10] Accordingly, because the regulations Plaintiff cites "fail to provide any tangible or concrete standard ... to allow a violation of such a flexible standard to result in liability would, in itself be imposing a standard 'different from, or in addition to' those imposed by the MDA...." *Id.* at *9. Therefore, Plaintiff has failed to plead "parallel claims."

Furthermore, Plaintiff's general and conclusory allegations that Defendant "fail[ed] to follow applicable federal law, federal regulations, and good practices" are insufficient [*e.g.,* Doc. 10 ¶ 35]. Plaintiff has failed to "set forth facts pointing to specific PMA requirements that have been violated." *Wolicki–Gables,* 634 F.3d at 1301 (internal quotation marks omitted); *see also Cline,* 914 F.Supp.2d at 1300 ("Absent from the complaint are specific factual allegations indicating exactly what FDA regulation was violated and in what manner. The Eleventh Circuit has foreclosed this generic approach to the pleading of parallel claims, holding that it fails to meet the requirements of *Twombly* and *Iqbal.*");

*Leonard,* 2011 WL 3652311, at *6 ("Besides being a general, conclusory allegation, the complaint does not point to specific premarket approval requirements that have been violated or allege any facts as to how those violations occurred. Without these allegations, Count One amounts to nothing more than the speculative proposition that 'full compliance would have resulted in a problem-free device.'"); *Llado–Carreno,* 2011 WL 6223409, at *5 ("These general allegations are insufficient to satisfy the requisite elements of a parallel claim, as Plaintiff fails to provide any factual detail to substantiate the crucial allegation. Specifically, he does not set forth any specific problem, or failure to comply with any FDA regulation that can be linked to the injury alleged." (internal quotation marks, alterations, and citations omitted)). Plaintiff's claims, which "simply incant the magic words [Defendant] violated FDA regulations," are therefore insufficient. *Wolicki–Gables,* 634 F.3d at 1301.[11] Hence, Plaintiff's claims are dismissed as they are preempted under *Riegel.*[12]

### IV. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss [Doc. 5] is DISMISSED AS MOOT, and Defendant's

---

10. In *Wolicki–Gables,* the United States Court of Appeals for the Eleventh Circuit cites *Ilarraza* several times. *Wolicki–Gables,* 634 F.3d at 1302.

11. Having already determined that Plaintiff's claims are expressly preempted, the Court need not consider Defendant's remaining argument that Plaintiff's claims are impliedly preempted under *Buckman Co. v. Plaintiffs' Legal Committee,* 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001). *See Wolicki–Gables,* 634 F.3d at 1302 ("Because the Gableses' claims are preempted, we do not address Arrow's assertion that private actions brought for violations of the FDA regulations are barred pursuant to 21 U.S.C. § 337(a)."); *Henderson,* 809 F.Supp.2d at 1380 n. 5 ("The

Court does not determine whether there is a private right of action under the post-marketing requirement of the FDCA.... [T]he Court finds that determining whether a private cause of action exists is unnecessary because Plaintiff fails to sufficiently allege causation, and Plaintiff's claim consequently fails.").

12. Because Plaintiff does not have a substantive state law claim, her derivative claim for punitive damages fails. *Haynes v. Cyberonics, Inc.,* No. 1:09–CV–2700–JEC, 2011 WL 3903238, at *9 (N.D.Ga. Sept. 6, 2011) (Carnes, C.J.) (citing *Benefit Support, Inc. v. Hall County,* 281 Ga.App. 825, 637 S.E.2d 763 (2006) for holding "failing to recover on underlying tort claims prohibits punitive damages as a matter of law").

Motion to Dismiss Plaintiff's Amended Complaint [Doc. 11] is GRANTED. Plaintiff's claims are dismissed. Judgment shall be entered in Defendant's favor, with costs taxed against Plaintiff.